SOUTHWESTERN BELL TELEPHONE
COMPANY, Petitioner,

v.

HOUSTON INDEPENDENT SCHOOL
DISTRICT, Respondent.

No. A–10101.

Supreme Court of Texas.

Nov. 10, 1965.

Rehearing Denied Jan. 19, 1966.

Ed Gossett, Dallas, Ford W. Hall, Sears & Burns, Houston, for petitioner.

Bracewell, Reynolds & Patterson, William Key Wilde, Houston, with above firm for respondent.

SMITH, Justice.

Southwestern Bell Telephone Company, hereinafter referred to as Bell, brought suit against the Houston Independent School District, hereinafter referred to as the District, to recover the sum of $82,-899.67 representing the balance of service charges due from the District for the period of September 1, 1959, to March 1, 1961. The District claims that by authority of a city ordinance adopted in 1911, it is entitled to have local exchange telephone service within the city limits of Houston furnished at the residence rate of $5.90 per month and accordingly paid a sum computed on that basis, as provided in such ordinance. On the other hand, Bell contends for payment on the basis of a one-party business flat rate of $16.50 per month.

After a trial without a jury and upon stipulated facts, the trial court rendered judgment for Bell. The Austin Court of Civil Appeals has reversed that judgment and rendered judgment that Bell take nothing. 376 S.W.2d 375. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court for the reasons now to be stated.

The ordinance which is the basis for the District's position was adopted on January 3, 1911, by the City Council of the City of Houston and reads as follows:

"AN ORDINANCE FIXING THE RATES TO BE CHARGED BY ANY PERSON, FIRM, CORPORATION, OR RECEIVER, OPERATING OR OWNING TELEPHONE LINES IN THE CITY OF HOUSTON FOR FURNISHING TELEPHONE SERVICE TO FIRE STATIONS AND TO THE PUBLIC SCHOOLS OF THE CITY OF HOUSTON.

\* \* \* \* \* \*

"BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF HOUSTON:

"Section I. That from and after the passage of this ordinance any person, firm, corporation or receiver, operating or owning telephone lines within the City of Houston shall furnish telephone service to fire stations and to public schools at the following rate, viz: Telephone service shall be furnished to fire stations at the rates provided for business or office phones. And telephone service shall be furnished to public school buildings at the rates provided for residence phones."

This ordinance was re-enacted in the 1914 Code and the 1922 Code of Ordinances of the City of Houston in substantially the same form, but it was not included in a later 1942 Code of Ordinances or in a rate ordinance adopted in 1949 or any other subsequent telephone rate ordinances.

Bell contends, and the trial court held, that the 1911 ordinance is invalid because (1) it is discriminatory and therefore void, (2) it has been repealed by implication, and (3) because the enforcement of the 1911 ordinance would be in violation of the terms of a district court judgment [1] entered

---

1. "It is, therefore, ORDERED, ADJUDGED AND DECREED that the temporary injunction heretofore issued, herein be and the same is hereby made permanent and that the Clerk of this Court forthwith issue a permanent injunction restraining and enjoining the defendants, the City of Houston, Texas, Roy Hofheinz, as Mayor, George Kesseler, Joe G. Resweber, Matt Wilson, Clyde J. Fitz- gerald, J. M. Heflin, Ira Kohler, Harry Holmes, Jr., and George G. Marquette, Jr., as Members of the City Council of the City of Houston, Texas, their agents, servants, employees, representatives and successors in office:

(a) From enforcing or attempting to enforce by suit or otherwise the charging, collecting, or observance by this plaintiff of the rates and

in 1955 enjoining the City from enforcing the rates provided in an ordinance adopted in 1949 or the rates adopted "* * * in any other ordinance heretofore enacted and effective in the City of Houston."

The District has consistently maintained that it is only obligated to pay at the lower residence rate prescribed by the ordinance of 1911. The District's position is that the 1955 injunction is not applicable because the ordinance is a "classification" ordinance, and not a rate ordinance. Bell contends that the 1911 ordinance is not a "classification" ordinance, as held by the Court of Civil Appeals, but is actually a "rate" ordinance, and, therefore, the City has been effectively enjoined by the terms of the 1955 judgment from enforcing or attempting to enforce the 1911 ordinance. We have concluded to sustain Bell's position on this ground; therefore, it is unnecessary to pass upon the questions of repeal by implication and discrimination.

 A city has no inherent power to regulate a utility. Whatever powers of this nature municipalities have in Texas are derived only from an express grant from the Legislature. Tri-City Fresh Water Supply District No. 2 v. Mann, 135 Tex. 280, 142 S.W.2d 945 (1940); Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033 (1934); Texas-Louisiana Power Company v. City of Farmersville, 67 S.W.2d 235 (Tex.Com.App.1933); Coleman Gas & Oil Company v. Santa Anna Gas Company, 67 S.W.2d 241 (Tex.Com.App.1933).

At the time the 1911 ordinance was originally adopted, and at all times thereafter, the only grant of authority to the City of Houston relative to telephone rates was contained in its·charter, Article II, Section 6, pertinent part as follows:

"The City Council shall have the power by ordinance to fix and regulate the price of water, gas and electric lights, and to regulate and fix the fares, tolls and charges of local telephones and exchanges; of public carriers and hacks, whether transporting passengers, freight or baggage, and generally to fix and regulate the rates tolls or charges of all public utilities of every kind." (Acts of 1905, 29th Leg., Regular Session, Special Laws, Chap. 17, pages 131–133.)

Under this section the Legislature did not expressly grant to the City the power to prescribe classifications. It is sufficient to note that both Bell and the District agree that, if the City has such power, it is a power derived from the express grant of rate-making authority. However, the District argues that after enactment the "classification" ordinance occupies a status separate from that of rate ordinances generally. We limit our decision to that of examining the language and effect of the ordinance so as to determine whether it is actually distinguishable from rate ordinances.

 This ordinance was originally enacted when the public school system within the corporate limits of the City of Houston was actually owned by the City. The ordinance itself, in its caption, was designated as one "FIXING THE RATES" to be charged to fire stations and public schools within the City by any telephone company. The purpose stated in the body of an act must conform to the notice-giving purpose stated in the caption, and the courts have given controlling effect to the purpose

charges for telephone service prescribed and set forth in Ordinance 4508 enacted by the City Council of the City of Houston on the 1st day of December, 1949, or *in any other ordinance heretofore enacted and effective* in the City of Houston;
(b) From assessing or seeking to enforce against the plaintiff, its of-

ficers, agents or employees, any fine or penalty or criminal charges on account of the failure of the plaintiff to charge and collect only the rates and charges for telephone service prescribed by Ordinance 4508." [Emphasis added.]

stated in the caption. Missouri, K. & T. Ry. Co. v. Mahaffey, 105 Tex. 394, 150 S.W. 881 (1912); Hennessy v. Automobile Owners' Insurance Association, 282 S.W. 791, 46 A.L.R. 521 (Tex.Com.App.1926). In 1923 the District assumed ownership and operation of the school system. It was stipulated that since 1911 the City has been regulating and fixing rates for the various classes of local exchange telephone service as proposed by Bell without ever attempting to generally classify Bell's services and customers for the application of local rates. In view of the wording of the ordinance, it seems apparent that the actual objective of the ordinance was not to create classifications, but rather to direct that public schools were to be charged the same rates as residences. We conclude that the City was inherently exercising its legislative power to actually fix the rates applicable to the public schools within its limits when it adopted the ordinance of 1911.

The ordinance of 1911 is, in effect, a rate ordinance, and it follows that the City has been enjoined by the judgment of the District Court entered on April 26, 1955, from enforcing or attempting to enforce by suit or otherwise the charging, collecting or observance by this plaintiff of the rates and charges for telephone services. The words of the judgment are clear and unambiguous. The judgment not only prohibits the enforcement of the 1949 ordinance, but prohibits the enforcement of all previous ordinances affecting rates. See Bankers Home Building & Loan Association v. Wyatt, 139 Tex. 173, 162 S.W.2d 694 (1942); Permian Oil Company v. Smith, 129 Tex. 413, 73 S.W.2d 490 (1934), 107 S.W.2d 564, 111 A.L.R. 1152 (1937).

In the absence of rate regulation by some authorized body, state or municipal, the telephone company may prescribe and apply its own rates, subject to the dictates of reasonableness and justice. Harris County Water Control and Imp. Dist. No. 58 v. City of Houston, 357 S.W.2d 789 (Tex.Civ.App., 1961 ref. n. r. e.); City of

Houston v. Memorial Bend Utility Co., 331 S.W.2d 418 (Tex.Civ.App.1960, ref. n. r. e.); and see United Gas Corporation v. Shepherd Laundries Co., 144 Tex. 164, 189 S.W.2d 485 (1945); 86 C.J.S. Tel. & Tel., Radio & Television §§ 83 and 87; 73 C.J.S. Public Utilities §§ 14 and 15.

We conclude that the ordinance applying residence rates to all public schools within the limits of the City of Houston is unenforceable by reason of the 1955 district court injunction, and Southwestern Bell Telephone Company is entitled to a judgment for the balance of the amount due from the Houston Independent School District.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.